IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION
                                          MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

    *Mildred Blankenship v. Boston Scientific Corp.*        No. 2:12-cv-08619

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 35]. For the reasons set forth below, the Motion is **DENIED**.

    **I.**    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific*

*Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Blankenship's case was selected as a Wave 2 case by plaintiffs.

On May 26, 2010, Ms. Blankenship was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx"), a product manufactured by BSC to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 35], at 3). She received her surgery at a hospital in Shreveport, Louisiana. (*Id.*). Ms. Blankenship claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including, but not limited to, pain, urinary problems, infections, scarring, and erosion. (*Id.*). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Am. Short Form Compl. [Docket 18], at 4). In the instant motion, BSC argues that each of the plaintiff's claims is barred by Louisiana's prescriptive statute, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Blankenship's entire case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying

facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction

3

where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). Thus, the choice-of-law principles of Louisiana guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Louisiana law to the plaintiff's claims. In tort actions, under article 3542 of the Louisiana Civil Code, the court must apply "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." Here, Ms. Blankenship resides in Louisiana, the product at issue was implanted in Louisiana by a Louisiana-based physician, and any alleged injuries occurred in the state. Thus, I apply Louisiana's substantive law—including Louisiana's prescriptive statutes—to this case.

### III.  Discussion

Under Louisiana law, the statute of limitations—or prescriptive statute—for tort actions is one year from the date of injury or damage. La. Civ. Code art. 3492. Importantly, the one-year prescriptive period applies to all claims under the Louisiana Product Liability Act ("LPLA"). *Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 99 So. 3d 739, 741 (La. Ct. App. 2012). Accordingly, all of Ms. Blankenship's claims asserted under the LPLA[1] are subject to the one-year prescriptive period. Likewise, the one-year prescriptive period applies to Ms. Blankenship's other claims. La. Civ. Code art. 3492 cmt. b ("The notion of delictual liability includes: intentional misconduct,

---

[1] Ms. Blankenship's claims under the LPLA include her strict liability for design defect claim, her manufacturing defect claim, her failure to warn claim, and her breach of express warranty claim.

4

negligence, abuse of right, and liability without negligence.").

The prescriptive statute is subject to the discovery rule, which suspends the running of prescription when a cause of action is not known and is not reasonably knowable to the plaintiff. *Griffin v. Kinberger*, 507 So. 2d 821, 823 (La. 1987). Constructive knowledge "requires more than a mere apprehension that something might be wrong," and "[p]rescription does not run against one who is ignorant of the facts upon which his cause of action is based, [so] long as such ignorance is not willful, negligent or unreasonable." *Id.* Importantly, "[p]rescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. *Jordan v. Emp. Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987). This is because "[p]rescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage." *Id.* Rather, prescription makes a plaintiff responsible for seeking out "those whom he believes may be responsible for a specific injury." *Id.*

Ms. Blankenship filed this action on July 9, 2012. (Class Action Pet. for Damages [Docket 1-2], at 1). BSC argues that Ms. Blankenship was aware of her claims, or should have been aware of her claims, as early as November 22, 2010, when she visited Dr. Kevin Cline for a post-surgery visit, and no later than June 10, 2011, when she consented to the mesh removal procedure. (Mem. in Supp. [Docket 35] at 9–10). In between, BSC contends that Ms. Blankenship was aware of her claims when she met with Dr. Alex Gomelsky on May 20, 2011. (*Id.* at 10). When viewed in the light most favorable to the nonmovant, however, the facts are not as indisputable as BSC frames them to be.

First, with regard to Ms. Blankenship's visits with Dr. Cline, Ms. Blankenship only testified that she *thought* there was something wrong with the mesh while she was Dr. Cline's

5

patient. (*See* Blankenship Dep. [Docket 59-2], at 65:1–65:13). While a reasonable juror may infer from such a statement that she was aware of her causes of action at that time, the proof is insufficient to unequivocally establish as much. *See Jordan*, 509 So. 2d at 423. Moreover, on July 30, 2010, Dr. Cline noted that Ms. Blankenship had "excellent correction of her prolapse," (Dr. Cline's Rs. [Docket 59-3], at 7), and, according to Ms. Blankenship's testimony, Dr. Cline assured her that nothing was wrong. (Blankenship Dep. [Docket 59-2], at 65:10–18). Accordingly, a reasonable juror could conclude that Ms. Blankenship was not aware, and should not have been aware, of her causes of action against BSC merely because she subjectively believed as much.

BSC's argument that Ms. Blankenship undoubtedly had knowledge of her claims after meeting with Dr. Gomelsky likewise misses the point. While Dr. Gomelsky observed that a mesh arm from the Obtryx possibly contributed to vaginal discomfort, such a notion was never confirmed. (*See* Dr. Gomelsky's Rs. [Docket 35-5], at 13–14). In fact, Dr. Gomelsky even provided Ms. Blankenship with the option to "watch" how the discomfort developed. (*Id.*). Moreover, Dr. Gomelsky testified that he could not conclude what the cause or causes of Ms. Blankenship's complications were. (Gomelsky Dep. [Docket 59-6], at 50:8–50:15; 50:16–18 (confirming that "just because there's a complication, that doesn't mean the device was defective in that case")). Accordingly, a reasonable juror could conclude that Ms. Blankenship was not aware, and should not have been aware, of her causes of action against BSC merely because a medical professional suggested the *possibility* that the Obtryx was the cause. *See Jordan*, 509 So. 2d at 423 ("Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage.").

Finally, BSC's argument that Ms. Blankenship was aware of her causes of action because she testified that she "knew" something was wrong with the mesh is also not dispositive. As Ms. Blankenship argues, her testimony did not go as far as attributing the cause of her problems to the Obtryx. (*See* Blankenship Dep. [Docket 59-2], at 63:4–65:18). To the contrary, as Ms. Blankenship argues, after she sought medical help, she was actually informed that the Obtryx was not the cause. (Blankenship Dep. [Docket 59-2], at 65:10–18). Plainly, a reasonable juror could determine that Ms. Blankenship was diligent in seeking out those who might be responsible for her injuries, but, in reasonable reliance on the opinions of medical professionals, did not become aware of her causes of action until a later date. *See Hoerner v. Wesley-Jensen*, 684 So. 2d 508, 514 (La. Ct. App. 1996) ("[A] prescriptive period does not begin to run until a claimant has knowledge of the damage, the wrongful act and the connection between them."). To hold otherwise would require this court to make impermissible inferences in the moving party's favor.

In the end, this determination is a fact question left to the jury. On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion.

### IV. Conclusion

As explained above, the defendant's Motion [Docket 35] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 18, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE